UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| RAPHAEL CINTRON | |
| Plaintiff | |
| v. | JURY TRIAL REQUESTED |
| FIRST STUDENT, INC. | |
| Defendant | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# COMPLAINT

## I. INTRODUCTION

1. This is a complaint for violation of the Americans with Disabilities Amendments Act as and N.H. RSA 354-A:7. The plaintiff, Raphael Cintron was offered a position conditioned upon satisfaction of a drug screen, background check, driving record check, and medical examination under Federal Motor Carrier Safety Administration regulations governing physical qualifications for operation of commercial motor vehicles. Mr. Cintron satisfied each of these conditions but was nevertheless rejected for employment when the defendant, First Student, Inc., learned that he was a person with Type 1 diabetes. First Student, Inc. told Mr. Cintron, expressly, that it would not hire him because of his diabetes.

## II. PARTIES

2. The plaintiff, Raphael Cintron ["Mr. Cintron"], resides in Derry, New Hampshire.

1

3. Defendant, First Student, Inc. ["First Student"], is a foreign profit corporation with a principal office in Cincinnati, Ohio.

4. First Student operates a location in Salem, New Hampshire.

5. First Student employs over 120,000 employees company-wide.

### III. JURISDICTION AND VENUE

6. This Court has jurisdiction over Mr. Cintron's Americans with Disabilities Amendments Act ["ADAAA"] claim pursuant to 28 U.S.C. § 1331, providing for district court original jurisdiction over civil actions arising from the laws of the United States.

7. This Court has supplemental jurisdiction over Mr. Cintron's RSA 354-A claim, which so relates to his ADAAA claim that they form the same case or controversy.

8. Alternatively, this Court has jurisdiction over the RSA 354-A claim under 28 U.S.C. § 1332 (a)(1). The claim in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

9. This Court is an appropriate venue for this cause of action because the plaintiff's injuries occurred in New Hampshire. See 28 U.S.C. § 1391(b)(2).

### IV. STATEMENT OF FACTS

10. Mr. Cintron is a person with Type 1 diabetes, and he has treated his diabetes with insulin since 2009.

11. Mr. Cintron is also: bilingual; a war veteran; a licensed practical nurse; and a former police officer for the Massachusetts Bay Transit Authority ["MBTA"].

12. Mr. Cintron retired from police work in the fall of 2019 after 23 years with the MBTA.

13.     On or about December 30, 2019, Mr. Cintron was reviewing job postings to secure new employment.

14.     He came upon a posting announcing that First Student was seeking bus drivers who would be "an integral part of the communities that they serve" and who would be committed to "customer service" and "safety."

15.     The advertisement stated that First Student was seeking candidates with: "good verbal skills"; "a valid driver's license for at least three years"; and who could pass a "background check, drug screen & physical."

16.     Knowing that he satisfied these requirements, Mr. Cintron applied for the bus driver position and submitted his resume as shown at Exhibit A.

17.     Shortly after his submission, Mr. Cintron was called for an interview.

18.     He met with a woman identified as "Ruthie" at First Student's Salem, New Hampshire location.

19.     Mr. Cintron was dressed in a business suit, and he fielded Ruthie's interview questions with professionalism.

20.     After some discussion of his background, Ruthie advised Mr. Cintron that he <u>would be hired</u> for a charter bus driver position pending only his clearance of: a drug screen; a background check; a driver's record check; and a medical examination.

21.     Mr. Cintron passed his drug screen, background check, and driver's record check without issue.

22.     Mr. Cintron next presented for his medical examination, on January 15, 2020.

23.     The medical examination was necessary to determine whether Mr. Cintron met Federal Motor Carrier Safety Administration ["FMCSA"] physical qualification standards for operating a

commercial motor vehicle.  See 49 C.F.R. §§ 391.11 and 391.41 – 391.49 (all promulgated pursuant to 49 U.S.C. § 113).

24. The examination was required to be performed by a medical examiner registered with the FMCSA's National Registry of Certified Medical Examiners.  See 49 C.F.R. §§ 390.101 and 391.43.

25. Mr. Cintron was examined by Kim Brown, PA-C who was so registered.

26. Ms. Brown determined that Mr. Cintron met all physical qualifications for operating a commercial motor vehicle pending his diabetes treating clinician's satisfactory completion of the FMCSA's "MCSA-5870" form, or the "Insulin-Treated Diabetes Mellitus Assessment Form."

27. On the MCSA-5870 form, Mr. Cintron's treating clinician could attest that he maintained a stable insulin regimen and proper control of his insulin-treated diabetes mellitus such that he could be qualified by Ms. Brown under the FMCSA physical qualification standards to operate commercial motor vehicles.  See 49 C.F.R. § 391.46.

28. On January 16, 2020, Mr. Cintron obtained from his diabetes treating clinician a completed MCSA-5870 form attesting that he, indeed, maintained a stable insulin regimen and proper control of his insulin-treated diabetes.  See Exhibit B.

29. The MCSA-5870 form was delivered to Ms. Brown who in turn issued Mr. Cintron a FMCSA Medical Examiner's Certificate deeming him qualified to operate commercial motor vehicles.  See Exhibit C.

30. Ms. Brown then transferred to First Student both the Certificate and Mr. Cintron's completed MCSA-5870 form identifying his diagnosis of "insulin-treated diabetes mellitus."

31. Clearly stated at the top of the MCSA-5870 form that was delivered to First Student was notice that "any determination as to whether the individual is physically qualified to drive a

commercial motor vehicle will be made <u>by a certified medical examiner on FMCSA's National Registry of Certified Medical Examiners</u>." See Exhibit B (emphasis added).

32. Also clearly stated, on the Medical Examiner's Certificate that was delivered to First Student, was Ms. Brown's certification that: "I certify that I have examined [Raphael Cintron] in accordance with the Federal Motor Carrier Safety Regulations 49 C.F.R. 391.41-391.49, and with knowledge of the driving duties, <u>I find this person is qualified</u>." See Exhibit C (emphasis added).

33. Soon after First Student received these documents, including the MCSA-5870 form <u>identifying Mr. Cintron as an insulin-treated diabetic</u>, Ruthie contacted Mr. Cintron to advise that First Student would <u>not</u> hire him specifically <u>because of his diabetes</u>.

34. Ruthie explained that the bus driver position for which Mr. Cintron would have been hired required operation of school buses and she added, <u>falsely</u>, that "state law" prohibited insulin-treated diabetics from operating school buses.

35. No New Hampshire law, in fact, prohibited persons with insulin-treated diabetes from operating school buses.

36. Rather, NH Saf-C 1304.01(a) (5) (authorized by RSA 21-P:14 (V)(d)) *permitted* a driver to operate a school bus so long as he has met the physical qualification standards of 49 C.F.R. §§ 391.41 through 391.47, including § 391.46 authorizing persons with insulin-treated diabetes to operate commercial vehicles with medical examiner approval, <u>which Mr. Cintron had, in fact, obtained</u>.

37. After rejecting Mr. Cintron for employment, First Student continued to advertise and seek bus driver applicants for its Salem, New Hampshire location without altering its stated requirements for the position.

38. Mr. Cintron suffered economic and emotional losses as a result of First Student's refusal to hire him due to his diabetes.

39. Mr. Cintron filed a charge of discrimination with the New Hampshire Commission for Human Rights and the EEOC, asserting that First Student violated the ADAAA and NH RSA 354-A:7, by denying him employment in a position for which he was qualified because of his disability. See Exhibit D.

40. Greater than 180 days after filing with the administrative agencies, Mr. Cintron removed his complaint from the agencies consistent with RSA 354-A:21-a, I. and 42 U.S.C. § 12117 (incorporating 42 U.S.C. § 2000e-5(f)(1)).

41. Mr. Cintron received a Notice of Right to Sue on or about January 22, 2021. See Exhibit E.

42. This complaint is timely filed within the 90-day period established by the Notice of Right to Sue.

**COUNT I – Discrimination in Hiring in Violation of the ADAAA**
**42 U.S.C. § 12112**

43. The preceding paragraphs are re-alleged and incorporated herein.

44. The ADAAA states as a "general rule": "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures …[and] the hiring … of employees." See 42 U.S.C. § 12112 (a).

45. The ADAAA construes "discriminate against a qualified individual on the basis of disability" to include "limiting …. a job applicant… in a way that adversely affects the opportunities of such applicant because of the disability of such applicant," see 42 U.S.C. § 12112 (b)(1), and "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity," see 42 U.S.C. § 12112 (b)(6).

46.     First Student is a "covered entity" within the meaning of § 12112 as it is an "employer" with 15 or more employees.  See 42 U.S.C. § 12111 (2) and (5)(a).

47.     Mr. Cintron was a "qualified individual" where, as a bilingual former police officer and nurse, he met the community service, verbal skill, and safety requisites for the bus driver position. Mr. Cintron was also qualified as he satisfied the drug screen and background check requirements for the position.

48.     Mr. Cintron further was a "qualified individual" where he satisfied the medical examination requirement of the bus driver position.  Ms. Brown, a certified medical examiner on the FMCSA's National Registry of Certified Medical Examiners, properly certified that he met the FMCSA physical qualification standards for operating commercial motor vehicles under 49 C.F.R. §§ 391.41 – 391.49.

49.     Mr. Cintron, as a person with Type 1 diabetes, has a "disability" with the meaning of the ADAAA.

50.      The ADAAA defines disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual."  See 42 U.S.C. § 12102 (1)(A).  A "physical impairment" is "any physiological disorder or condition… affecting one or more body systems" including the "endocrine" system, see 29 C.F.R. § 1630.2 (h)(1), and a "major life activity" includes operation of a "major body function" including endocrine function, see 42 U.S.C. § 12102 (2)(B).

51.     Type 1 diabetes "substantially limits" the major life activity of endocrine function and therefore constitutes a disabling impairment within the meaning of the ADAAA.  See 29 C.F.R § 1630.2(j)(3)(iii).

52.     First Student discriminated against Mr. Cintron, on the basis of his disability, where it informed him that it was denying him an opportunity for employment in the bus driver position precisely because of his diabetes, and where it used a physical qualification standard, purportedly

7

and <u>falsely</u> under "state law," to exclude him from employment despite that the standard was <u>not</u>, actually, consistent with business necessity. Mr. Cintron <u>was</u>, in fact physically qualified to operate First Student's buses under FMCSA regulations and New Hampshire's Saf-C 1304.01 regulation.

53. To state a prima facie case for disability discrimination in hiring, Mr. Cintron must allege facts showing only that "he applied for an available position for which [he] was qualified" and "was rejected under circumstances which give rise to an inference of unlawful discrimination." <u>Gillen v. Fallon Ambulance Serv., Inc.</u>, 283 F.3d 11, 30 (1st Cir. 2002).

54. Mr. Cintron has alleged facts giving rise to an inference of unlawful discrimination where he has alleged:

(a) that First Student initially offered him the bus driver position and rejected him only *after* it was notified of his Type 1 diabetes on the MCSA-5870 form;

(b) that he was told he was rejected specifically <u>due to his diabetes</u>;

(c) that First Student was repeatedly notified, on both his MCSA-5870 form and on his Medical Examiner's Certificate, that Ms. Brown, the medical examiner, had the authority to deem him physically qualified to operate First Student's commercial motor vehicles;

(d) that First Student received Ms. Brown's Medical Examiner's Certificate, showing that she did, in fact, deem Mr. Cintron physically qualified to operate First Student's commercial motor vehicles;

(e) that Mr. Cintron's Type 1 diabetes did not, in fact, render him unqualified under state regulation to operate specifically school buses so as to potentially impede First Student's business operations; and

(f) that First Student continued to seek applicants for the bus driver position at its Salem, New Hampshire location after it rejected Mr. Cintron for the position.

55. Mr. Cintron has suffered economic and emotional harm, entitling him to all remedies available to him under 42 U.S.C. § 12117 (a).

56. First Student employs over 120,000 employees, and has resources with which to apprise itself of disability discrimination law.

57. Type 1 diabetes has "easily been considered" a protected disability under the ADAAA since the law's enactment in 2008. See 29 C.F.R § 1630.2(j)(3)(iii).

58. Per the CDC, a full 13% of U.S. adults have been diagnosed with diabetes.

59. Since at least 2018, FMCSA regulations, 49 C.F.R. §§ 391.41 – 391.49, have included persons with insulin-treated diabetes as physically qualified individuals to operate commercial motor vehicles.

60. Upon information and belief, First Student "perceived the risk" that its refusal to hire Mr. Cintron due to his diabetes would violate federal law, entitling Mr. Cintron to punitive damages. See Kolstad v. American Dental Ass'n, 527 U.S. 526 (1999).

**COUNT II – Discrimination in Hiring in Violation of New Hampshire's Law Against Discrimination**
**RSA 354-A:7**

61. The preceding paragraphs are re-alleged and incorporated herein.

62. N.H. RSA 354-A:7, I provides that "It shall be an unlawful discriminatory practice: For an employer, because of …. physical or mental disability…of any individual, to refuse to hire or employ or to bar … from employment such individual unless based upon a bona fide occupational qualification."

63. To state a prima facie case for discriminatory refusal to hire or barring from employment, the plaintiff may allege facts showing "(i) that he belongs to a . . . minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his

9

qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." Scarborough v. Arnold, 117 N.H. 803, 807–08 (1977). However, the test is not meant to be an inflexible rule and prima facie proof of discrimination may vary according to the facts of each situation. Scarborough v. R. T. P. Enterprises, Inc., 120 N.H. 707, 710, 422 A.2d 1304, 1307 (1980)

64. As discussed in paragraphs 42 to 54 supra, Mr. Cintron has alleged that he (i) is disabled; (ii) that he applied for and was qualified for First Student's bus driver position; (iii) that he was rejected for the position; and (iv) that First Student continued to seek applicants for the Salem, New Hampshire bus driver position without altering its eligibility requirements for the position.

65. As is also alleged, supra, Mr. Cintron was rejected for the bus driver position only after his disability was disclosed to First Student, and specifically because of his disability, despite clear notifications to First Student that his disability presented no legitimate impediment to his hiring.

66. Where First Student offered Mr. Cintron bus driver employment conditioned only upon a satisfactory drug screen, background check, driver's record check, and medical examination pursuant to FMCSA regulations 49 C.F.R §§ 391.41-391.49, and he satisfied each of these conditions, Mr. Cintron actually met all bona fide occupational qualifications for the bus driver position and was barred from employment exclusively due to his disability, without any excuse based on a bona fide occupational qualification.

67. Mr. Cintron has suffered economic and emotional harm due to First Student's refusal to hire and/or barring him from employment, and he is entitled to all remedies available to him under RSA 354-A:21-a, I, including enhanced compensatory damages for First Student's willful or reckless disregard for Mr. Cintron's right to be considered for employment as a person with a disability.

WHEREFORE, the Plaintiff, Raphael Cintron, respectfully prays that this Honorable Court:

    A.    Schedule this matter for trial by jury, and after trial;

B. Order employment of the Plaintiff after trial;

C. Award the Plaintiff damages for his economic losses, including without limitation lost wages (back and front pay), lost employment benefits, and lost earning capacity;

D. Award the Plaintiff compensatory damages, including without limitation emotional distress, humiliation, inconvenience and loss of enjoyment of life;

E. Award enhanced compensatory damages;

F. Award the Plaintiff punitive damages;

G. Award the Plaintiff his reasonable attorney's fees;

H. Award the Plaintiff interest and costs;

I. Award all other damages available to the Plaintiff at law, and

J. Award the Plaintiff such other relief as this court deems equitable and just.

 

Respectfully submitted,

RAPHAEL CINTRON,

By his attorneys,

DOUGLAS, LEONARD & GARVEY, P.C.

Date: April 20, 2021    By:    /s/ Megan Douglass
Megan Douglass #19501
14 South Street, Suite 5
Concord, NH 03301
(603) 224-1988
mdouglass@nhlawoffice.com